Good morning. May it please the Court, my name is Brian Mesger, Counsel for the Petitioner. This case involves two major issues, credibility and a closely linked on-account-of issue. Regarding credibility, it should first be noted that the Board disagreed with a major element of the immigration judge's holding that the fact that Akali Dalman is a legal party in India made it incredible that the petitioner would be persecuted for links to it. While there is insufficient time today to address every point of the immigration judge's credibility determination, it should be emphasized that a number of the supposed inconsistencies cited by the immigration judge give rise to serious concerns about how much attention this particular immigration judge gave to the case at hand. Do you agree that this case rises or falls on credibility determination? Yes. And immigration judges typically give laundry lists of their reasons for finding a lack of credibility, and indeed, in this case, there were numbered, I think, we counted nine. At least. At least. But would you also agree, without conceding the case, that if we find any one of these bases to be supported substantially by the record, then we must respect the adverse credibility determination? Would you agree with that as principle of law? Not. Some of them are not so. There is none. Would you agree? No, I would not. As a principle of law, that if we find that one or more of the bases upon which the immigration judge determined that your client lacked credibility, then game off? Not if it was a minor inconsistency, Your Honor. Okay. Well, let's talk about two that concern me, and perhaps you can respond to them. One that I find substantial evidence in the record to support is this business about his mother's affidavit. Do you want to talk about that? Sure, Your Honor. Where he said that something was in an affidavit, but the translation he offered didn't contain it. Well, Your Honor, I believe that he had not actually seen the affidavit initially, so there was some confusion about what exactly was in the affidavit. He provided intelligent speculation about why something might or might not be in the affidavit. When it was pointed out that the item actually was in the affidavit, then he naturally responded to that issue. So I think it does not support negative credibility. It was merely his responding to a belief that a certain item was in the affidavit. You know, in a regular normal trial, a witness gets on the stand and says X happened or X didn't happen. And then on cross-examination, they're asked the setup question, are you sure that that happened or didn't happen, and they say, I'm sure. And then they're shown a piece of paper that absolutely contradicts their testimony. Wouldn't a reasonable fact finder, a jury, whatever, be perfectly entitled, based on that alone, to disregard the entirety of the witness's statement? If it, in fact, directly contradicted. But I don't believe the mother's affidavit does. The only real inconsistency, and it's not even an inconsistency, it's an omission, in the mother's affidavit is that she wasn't – she didn't mention that she had been arrested on a certain date. The first claim that it was in the affidavit, then when you were shown a translation, said, oh, yeah, it's there, I guess. But that's a translation problem. That doesn't necessarily support negative credibility. And we know that under Bandari, a mere omission does not, in a document, does not necessarily support a translation problem. We could also be lying about what it says, figuring that these English-speaking judges won't know any better. Well, Your Honor, we really don't know that. And that's not why the immigration judge cited that. There appeared to be some confusion about what he knew was in the English translation, which might have even been mistaken. According to an item where there appears to be no, at least to my untrained eye, no wiggle room, his asylum application said he was living in the United States from September to December 2000. And then he offers an affidavit from his uncle that says he was living in India. Well, again, I don't think that necessarily supports negative credibility. First of all, it's the uncle's affidavit. We know precisely. Who offered the affidavit? Well, he did, Your Honor. But we know precisely. Offers proof that directly contradicts his sworn asylum application? I don't think it does directly contradict it because the uncle is stating over a certain period of time Mr. Singh was with him. That doesn't necessarily mean there couldn't have been interruptions in that time. This affidavit doesn't say at all moments he was with me. So I don't think it necessarily directly contradicts. What's going on with burden of proof in your argument? It sounds like you're saying if there's any conceivable explanation of apparent inconsistencies, then the inconsistencies must be disregarded. But I thought it was just the opposite. It is. It is the opposite, Your Honor. But I think that the Mr. Singh provided plausible explanations. And under Ninth Circuit precedent, that's what required, plausible. Could he offer an explanation for this? I'm sorry. Go ahead. Could he offer an explanation for this? In the sense that he stated precisely, he responded precisely to the questions asked of him. And he did not, in his oral testimony, he did not say anything that was not correct. No. Did he offer an explanation for the inconsistency between the uncle's affidavit and his asylum application? I don't think he necessarily saw an inconsistency in that the uncle stated a broad period of time. Can we start with a yes or no? You may have all the explanations in the world. Correct, Your Honor. Yes or no, did he, in his testimony before the I.J., offer an explanation for this inconsistency we've been talking about? I believe the explanation was implied, Your Honor, in his responses to very precise questioning of the I.J. and counsel's president. Perhaps if you save some time for rebuttal, you can point to specific points in the record that support your argument. I do, too. I'm not suggesting you sit down. I'm just, that's when you could do it. Your argument seems to suggest that if an explanation is offered, it has to be accepted. But that's not the law, is it? He has to be given an opportunity to explain as a matter of due process. But the agency is not required to believe his explanation and find him credible in the face of material inconsistencies, correct? That's correct. But there are plausible explanations that were offered on a number of points. And also, the basic reasoning of the I.J. was unfortunately very flawed in a certain number of areas, because he appeared to completely misunderstand Mr. Singh's case. For example, that the arrest in 1995, then later on he was arrested in 1999, and the I.J. conflated these items together, which raises very worrisome issues about whether or not the I.J. was really paying attention, which I think has a lot to do with the confusion over many of the other points that the I.J. cited. Tell me if I've got this right. I thought your fellow said that his father was arrested in 2000. But then he said at another point that his father was arrested in 1996, four years earlier, and was never heard from again. The 2000 was a misstatement by Mr. Singh. And on its own, that would not, in the totality of the circumstances, necessarily support negative credibility. I would reserve the balance of my time unless there are more questions. Good morning. My name is Curt Larson, and I represent the Attorney General in this case. In this case, the Board's finding that Mr. Singh's claim of persecution lacks credibility is supported by substantial evidence, and this Court should uphold that decision. Petitioner's inconsistencies and contradictions form the basis of the finding. Your Honor, 2.2 in the record concerning the uncle's statement, page 16 of the administrative record, when the petitioner appealed to the Board, they stated the immigration judge was correct in finding that the declaration submitted by Mohan Singh contradicted Respondent's testimony concerning the dates that Respondent was in the United States. Mohan Singh's declaration should not be entitled to any evidentiary weight. I think the exchange that I had with your opponent was to try to find out if Petitioner offered an explanation for this inconsistency. What is your reading of the record? That he did not at all, Your Honor. He did not at all. And, in fact, the contradictions with the other affidavits that he submitted, again, he went to the front of the Board in administrative record 16 and stated, please pull those. They contradict, and they shouldn't be given any evidentiary weight whatsoever. And as the immigration judge pointed out, there are nine or ten different ones. The one that we really do need to focus more on the Board's decision, because that's what this Court is affirming, and the Board's decision points to, I believe, five. The mother's declaration that you pointed out, Your Honor, the uncle's statement, that he didn't seek medical attention, and, again, he goes back and forth over that. But let me talk about the mother's declaration first. In the end, the Petitioner's brief states, you know, here's something that went back and forth, but whichever version rules the day, well, there it is. Well, you can't do that. It has to be one or the other, and you've got to explain it. You can't, in the end, say whichever version rules the day because the immigration judge and the Board of Immigration Appeals have deference in these opinions. Any questions? I think we're done. Thank you. Thank you, counsel. You saved a moment. Your Honor, in response to your question, I think many of the answers that the Mr. directly result of the instructions of the IJ to precisely answer the questions. And I don't really see a contradiction between an affidavit of an uncle who says that a certain individual had been there a certain period of time, which doesn't allow for possible travel during that period. I mean, it's just like certain laws. And I would have a lot less concern about this particular point if your client had said in his testimony, that's right, I did go back once or twice. Here are my plane tickets. Here's my passport with the entry and exit stamps on it. And if the government didn't rejoin that, as far as I'm concerned, it would be off the chart. But that didn't happen. Well, he did say that he returned to India, Your Honor. I mean, it's very clear that he did return to India. That was his testimony during and then he came back to the United States. So, I mean, he did respond to that. Was he asked at the start of the hearing if the statements in his asylum application were true and correct? If the statements in his asylum application were true and correct? Yes. Well, of course, Your Honor. That's standard procedure. Okay. Thank you, counsel. Thank you. Mr. Chaujit Singh v. Gonzalez is admitted. We'll hear Semkin v. Genesis Medical International. May it please the Court.
judges: Kleinfeld, Hawkins, Graber